IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JACQUELINE YOUNG        :       CIVIL ACTION
                              :
         v.                   :
                              :
TEMPLE UNIVERSITY HOSPITAL     :       No. 08-691

MEMORANDUM

Dalzell, J.                            October 15, 2008

Plaintiff Jacqueline Young sued her former employer, Temple University Hospital ("Temple"), alleging hostile work environment, sex discrimination, constructive discharge and retaliation under Title VII of the Civil Rights Act ("Title VII") and the Pennsylvania Human Relations Act.[1]  Temple has moved for summary judgment, and we now resolve that motion.

## I.  **Factual Background**

In January of 2005, Temple hired Young as a contractor for the position of Certified Occupational Therapist Assistant ("COTA") in Temple's Occupational Therapy Department.  Def.'s Mem. Ex. 1 [Young Dep.] at 21.  Young had been a COTA since 1983, and had previously worked at Moss Rehabilitation Hospital in

---

[1]The analysis under these statutes for such claims is the same.  Weston v. Pennsylvania, 251 F.3d 420, 426 (3d Cir. 2001). For ease of exposition we will make all of our references to Title VII.

Philadelphia and at Sundance Rehabilitation in Camden, New
Jersey.  Id. at 9, 15.  In March of 2005, Temple hired Young as a
full-time, unionized Temple employee.  Id. at 22, 73.

The Occupational Therapy Department had a simple
hierarchy.  The overall departmental supervisor for the
Occupational Therapy Department was Josette Merkel.  Id. at 43.
Below her were the Outpatient and Stroke Neurology supervisors,
then the Occupational Therapists, then the COTAs, and finally the
Rehabilitation Aides.  Id. at 39, 43-45.  When Young started
there were many Occupational Therapists, but only two COTAs and
two Rehabilitation Aides.  Id. at 45.  Young's responsibilities
as a COTA included working in the rehabilitation unit and
assisting occupational therapists with the evaluation,
development, and treatment of patients.  Id. at 36-39.

While Young worked at Temple, Merkel reviewed her
performance twice, once in August of 2005 and then again in April
of 2006.  Both of these reviews were favorable.  Id. at 50, 56-
58; Def.'s Mem. Ex. 2 [Merkel Dep.] at 100-101.  In March of
2006, and during her April review that year, Young discussed the
possibility of a promotion with Merkel.  Young Dep. at 63-68.
Young wanted to be promoted to the position of "Senior" COTA.
Id. at 61-62.  At the time, Temple did not have such a position.

Id.  During their discussions, Merkel stated that she would look into creating such a position, and assured Young that if such a position were created, Young would be more than qualified for it. Id. at 62-72.  In the months leading up to her departure from Temple, Young continued to discuss the creation of a Senior COTA position with Merkel as well as the other supervisors in the Occupational Therapy Department.  Id.  Young acknowledged that no one promised her the position.  Id. at 147.  Temple did not and has not created a Senior COTA position.  Id. at 62, 64.

During Young's tenure in the Occupational Therapy Department, Temple also employed Roosevelt Brant as a Rehabilitation Aide, a unionized position.  Young Dep. at 76; Merkel Dep. at 98.  As a Rehabilitation Aide, Brant was responsible for assisting with patient treatment, obtaining supplies, and transporting patients.  Young Dep. at 74; Pl.'s Mem. Ex. C [Gethers Dep.] at 20, 24.

From the start of her employment at Temple, Young and Brant had problems.  Young testified that Brant generally refused to take direction from her.  Young Dep. at 78-79.  In August of 2005, Brant had refused to clean dirty dishes from a therapy session.  Id. at 83-84.  In November of 2005, Brant repeatedly ignored Young's pages.  Id. at 86-87.  In July of 2006, Brant

3

refused to bring Young a pair of gloves needed for patient care, and when pressed about this refusal began screaming in Young's face.  Id. at 91-92.  That same month, Brant also refused to pick up sheets used during a therapy session, and made disparaging comments about Young while waiting for her to come to the phone. Id. at 101-03.  In October of 2006, Brant again refused to clean up a dirty dish used in a therapy session.  Id. at 118.  On many occasions throughout her tenure at Temple, Brant would bump into Young or block her path with both his body and a gurney.  Id. at 109, 114, 119-122.  There is no evidence that Brant made any derogatory comments directly about Young's gender.

Young complained to Merkel several times about these incidents.  Id. at 85.  In response, Merkel repeatedly reprimanded and disciplined Brant.  Id. at 84-85, 95-97, 119, 122; Def.'s Mem. Ex. 3.  After the first dirty dish episode, Merkel spoke to Brant and told him that he had to follow Young's directives.  Young Dep. at 84-85.  After Young complained about the incident with the gloves, Merkel called in both Brant and Young to hear each side of the story, and again decided to discipline Brant about his behavior.  Id. at 95.  Merkel also met with Brant to discuss the bumping incidents.  Id. at 263.

In August of 2006, Young met with Richard Lutman,

4

Director of Labor Relations at Temple, to complain about her experiences with Brant.  Young Dep. at 106, 110-113.  During that meeting, Lutman explained that Temple was looking into the issues people were having with Brant, but he could not discuss it further because the matters were confidential.  Id. at 113.  In the fall of 2006, Lutman met with Merkel, Young, and an Occupational Therapist named Nancy Gast to further discuss Brant. Id. at 113-15.  During this meeting, Young and Gast aired their grievances.  Id.  Lutman reiterated that Temple was investigating the complaints about Brant's behavior, but, again, could not comment because the matter was confidential.  Id.  Young never filed a grievance with her union about the manner in which Temple handled the Brant situation.  Young Dep. at 145.

Young was not the only one complaining about Brant. Seven other Temple employees also complained about his behavior: Danielle Donia, Mecca Gethers, Nancy Gast, Deb Berrutti, Kristen Fratz, Matt Shelak, and Jonathan Nysak.  Merkel Dep. 58-62, 85, 93, 146-48, 149, 159-60.  These people complained about much the same things as Young, i.e., rudeness, blocking, bumping, etc. Id. 89-90; Def.'s Mem. Ex. 3.  Of all of the complainants, only Young, Berrutti, and Gethers believed Brant's behavior was gender motivated.  Merkel Dep. at 85-86.  Both Berrutti and Gethers

testified that Brant tried to intimidate them by staring at them, speaking in a hostile manner, and blocking or bumping them with a gurney.  Gethers Dep. at 39, 54-55, 62-65; Pl.'s Mem. Ex. D [Berrutti Dep.] at 20-21.  Most of these complaints fell between March 16, 2006 and December of 2006.  Def.'s Mem. Ex. 3.

Merkel met with Brant repeatedly regarding incidents involving various members of the Occupational Therapy Department. Def.'s Mem. Ex. 3.  Merkel gave Brant written warnings regarding his behavior on December 21, 2005 and March 16, 2006.  Id. at 2. On August 21, 2006, Temple suspended Brant for one day because of the incidents involving Young in July of 2006.  Id. at 2-3.  In the three months before his termination, Brant began avoiding the various members of the department with whom he was having problems, and this led to complaints that Brant was not providing assistance consistent with his job duties.  Id. at 3-4.  Finally, on February 2, 2007, after two incidents in January of 2007 involving Occupational Therapists Gethers and Donia, Temple terminated Brant.  Id. at 5.

Brant filed no less than four separate grievances with his union, challenging Temple's corrective actions and, in one instance, accusing Merkel of discriminating against him.  Id. at 1-3, 5; Merkel Dep. at 296.  In each instance, the union upheld

Temple's actions.  Def.'s Mem. Ex. 3 at 1-3, 5.  Temple
progressed through the disciplinary process the collective
bargaining agreement required by giving Brant verbal and written
warnings, then suspending him, and ultimately terminating him on
February 2, 2007.  Id; Merkel Dep. at 98, 269, 300-01.

Shortly before Temple terminated Brant, Young had
resigned and found alternative employment, Young Dep. 22, 128.
Her last day at work was January 26, 2007.  Id. at 142.  When
Merkel learned of Young's resignation, she asked Young to
reconsider because Temple was working to solve the Brant problem.
Id. at 130, 136.  During Young's exit interview with the Human
Resources Department, she again discussed her problems with
Brant, and Human Resources again stated that Temple was working
on the problem but could not discuss it because it was
confidential.  Id. at 131-34.

Immediately after Temple terminated Brant, Merkel
contacted Young, told her what had happened, and unconditionally
offered her a job back at Temple.  Id. at 135-37.  Young
declined.  Id.  No one else who had complained about Brant
resigned his or her position for that reason.  Young Dep. at 151-
53, 307; Merkel Dep. at 307.

## II.  **Analysis**[2]

Young brings two sets of claims.  First, she alleges that Temple subjected her to a hostile work environment and constructively discharged her from her job.  Second, Young claims that Temple retaliated against her complaints about Brant's

---

[2]Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  In ruling on a motion for summary judgment, the Court must view the evidence, and make all reasonable inferences from the evidence, in the light most favorable to the nonmoving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).  Whenever a factual issue arises which cannot be resolved without a credibility determination, at this stage the Court must credit the non-moving party's evidence over that presented by the moving party.  Liberty Lobby, 477 U.S. at 255.

The moving party bears the initial burden of proving that there is no genuine issue of material fact in dispute.  Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 585 n.10 (1986). Once the moving party carries this burden, the nonmoving party must "come forward with 'specific facts showing there is a genuine issue for trial.'" Matsushita, 475 U.S.  at 587 (quoting Fed. R. Civ. P. 56(e)).  The non-moving party must present something more than mere allegations, general denials, vague statements, or suspicions.  Trap Rock Indus., Inc. v. Local 825, 982 F.2d 884, 890 (3d Cir. 1992); Fireman's Ins. Co. of Newark v. DuFresne, 676 F.2d 965, 969 (3d Cir.1982).  It is not enough to discredit the moving party's evidence, the non-moving party is required to "present affirmative evidence in order to defeat a properly supported motion for summary judgment." Liberty Lobby, 477 U.S. at 257 (emphasis in original).  A proper motion for summary judgment will not be defeated by merely colorable or insignificantly probative evidence.  See Liberty Lobby, 477 U.S. at 249-50.  Also, If the non-moving party has the burden of proof at trial, then that party must establish the existence of each element on which it bears the burden.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

behavior by failing to promote her to the position of Senior

COTA.  We shall first consider Young's hostile work environment

and constructive discharge claims, and then turn to her

retaliation contention.

### A.   **Hostile Environment**

In order to establish a <u>prima</u> <u>facie</u> case for a hostile

work environment claim, the plaintiff must establish that (1) she

suffered intentional discrimination because of her membership in

a protected class; (2) the discrimination was severe or

pervasive; (3) the discrimination detrimentally affected her; (4)

the discrimination would have detrimentally affected a reasonable

person in the same position; and (5) there is a basis for

employer liability.  <u>Jensen v. Potter</u>, 435 F.3d 444, 449 (3d

Cir.2006), <u>abrogated</u> <u>on</u> <u>other</u> <u>grounds</u> <u>by</u> <u>Burlington N. & Santa Fe</u>

<u>Ry. Co. v. White</u>, 548 U.S. 53 (2006).  Furthermore, to succeed in

the compound claim of constructive discharge due to a hostile

work environment, the plaintiff must establish that "the conduct

complained of would have the foreseeable result that working

conditions would be so unpleasant or difficult that a reasonable

person in the employee's shoes would resign."  <u>Clowes v.</u>

<u>Allegheny Valley Hosp.</u>, 991 F.2d 1159, 1161 (3d Cir. 1993) <u>cert.</u>

denied 510 U.S. 964 (1993).

Here, Temple argues that Young cannot establish the first, second, and fifth elements of the prima facie case for a hostile work environment claim, and also cannot establish constructive discharge.  We disagree with Temple as to the first two elements, but agree with its analysis regarding the fifth element and constructive discharge.  We will therefore grant summary judgment in Temple's favor on these claims.

Temple contends that Young cannot establish that Brant's harassment was due to her sex.  Temple points out that male employees also complained about Brant's behavior, and Young cannot point to anything Brant did which overtly related to her sex.  Merkel Dep. at 159-60.  Were Young's only rebuttal to be based solely on her personal feelings that Brant acted out of animosity towards her sex, there might not be enough evidence of record for Young to establish the first element of a hostile work environment claim.  But two other female employees, Berrutti and Gethers, also stated that they believed that Brant's behavior was due to their sex.  Merkel Dep. at 85-86.  A reasonable jury, on this record, could find that Brant was motivated by animus towards Young's sex.

Temple argues that the harassment was neither severe

nor pervasive.  To determine whether harassment is severe or pervasive, we examine the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993).  Temple contends that Young has only pointed to five instances of Brant's offensive behavior over the course of her two years of employment at Temple, and this is insufficient to establish severe or pervasive harassment.  Def.'s Mem. at 13.

But Young testified to more than five instances.  Her testimony, as well as that of other employees who complained about Brant, in essence said that problems with Brant happened all the time.  Young Dep. at 108-09; Gethers Dep. at 33-35, 40-55, 68; 48,50-51, 58, 68.  Though much of Brant's conduct simply amounts to derelictions of duty and off-hand comments, bumping people with a gurney and shouting in their faces make Brant's behavior more than a mere offensive utterance and take it into the realm of physically threatening or humiliating.  We find that Young has presented enough evidence to establish the severe and pervasive element of her prima facie case.

Temple argues that there is no basis for employer liability.  An employer may be liable for another employee's harassment of a plaintiff if the employer's conduct amounts to a "negligent failure to discipline or fire, or failure to take remedial action upon notice of harassment [or] if the harassing employee relied upon apparent authority or was aided by the agency relationship."  Knabe v. Boury Corp., 114 F.3d 407, 411 (3d Cir. 1997) (internal citations omitted).

Here, Young argues Temple's liability arises from its negligent failure to act on the complaints lodged against Brant by Young and other Temple employees.  Pl.'s Mem. at 30-31.  But she provides no evidence that Temple failed in its responsibilities to her or its other employees regarding Brant's behavior.  The only thing Young presents is the unsupported statement that Temple "knew of Young's complaints, supported by the complaints of other female employees, and did nothing." Pl.'s Mem. at 29 n.13.

But Temple did do something.  "[T]he law does not require that investigations into sexual harassment complaints be perfect.  Rather, to determine whether the remedial action was adequate, we must consider whether the action was reasonably calculated to prevent further harassment."  Knabe, 114 F.3d at

12

412 (internal quotations omitted).

The record establishes that Merkel repeatedly reprimanded and disciplined Brant.  Young Dep. at 84-85, 95-97, 119, 122; Def.'s Mem. Ex. 3.  It is also clear from the record that Young was aware of some of the disciplinary actions taken against Brant.  <u>See</u> Young Dep. at 84-85, 95-97, 119, 122.  Temple's alleged failure to act is further belied by the unambiguous record of Brant's offensive behavior that Merkel compiled in order to follow the disciplinary and termination process Temple's collective bargaining agreement required.  <u>See</u> Def.'s Mem. Ex. 3.  In the end, Temple terminated Brant conformably with those procedures.  Merkel Dep. at 228-229; Berrutti Dep. at 95-97.

Neither Young's belief that these procedures were too time consuming, nor her belief that she should be appraised of the progress, nor her preference to have Brant segregated from the female Occupational Therapy staff establishes <u>any</u> negligence on Temple's part.  Temple's actions were calculated to end the harassment by means of progressive disciplinary actions culminating in Brant's termination.  We cannot see what more Temple could have reasonably done without exposing itself to liability to Brant or running afoul of the collective bargaining

agreement.

Temple argues that Young cannot establish that she was constructively discharged.  As we have found that Young cannot establish a prima facie case for her hostile work environment claim, this is fatal to her establishing constructive discharge. Konstantopoulus v. Westvaco Corp., 112 F.3d 710, 718-19 (3d Cir. 1997).

Assuming that Young could establish her hostile work environment claim, she still could not establish constructive discharge.  "Constructive discharge occurs when an employer knowingly permits conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign."  Spencer v. Wal-Mart Stores, Inc., 469 F.3d 311, 316 n.4 (3d Cir. 2006) (citing Goss v. Exxon Office Sys. Co., 747 F.2d 885, 888 (3d Cir. 1984)) (emphasis added).

There is no doubt that Brant was making the lives of people in the Occupational Therapy Department difficult, but, as we already noted, no reading of the record allows one to find that Temple allowed Brant to act as he did without consequence. Temple reprimanded and disciplined Brant, and when that failed they began the onerous procedure leading to his termination. Def.'s Mem. Ex. 3.  It is true that it took Temple a long time to

14

finally terminate Brant, but this was due to the progressive action the collective bargaining agreement obliged Temple to follow.  Merkel Dep. at 98, 269, 300-01.  Young offers no evidence that Temple, implicitly or explicitly, endorsed any of Brant's actions or that any delay was due to Temple's intentional acts or negligence.  Without some evidence that Temple's actions actively made Young's situation worse, or, at least, negligently permitted Brant to act without consequence, there is no way Young can establish she was constructively discharged.

Therefore, we will grant summary judgment in Temple's favor on Young's hostile work environment and constructive discharge claims.

### B.   Retaliation

Young also asserts a retaliation claim under Title VII. Title VII prohibits employers from discriminating against an employee "because he has opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]."  42 U.S.C. § 2000e-3(a).

We analyze Title VII retaliation claims under the

burden-shifting analysis of <u>McDonnell-Douglas Corp. v. Green</u>, 411 U.S. 792 (1973) and <u>Texas Dep't of Cmty. Affairs v. Burdine</u>, 450 U.S. 248 (1981).  Under this approach, the plaintiff must first prove a <u>prima facie</u> case of discrimination.  <u>McDonnell-Douglas</u>, 411 U.S. at 802; <u>St. Mary's Honor Center v. Hicks</u>, 509 U.S. 502, 506 (1993).  If the plaintiff succeeds, then the burden shifts to the defendant to "articulate some legitimate, non-discriminatory reason for the [adverse employment action.]"  <u>McDonnell-Douglas</u> at 802.  The burden then shifts back to the plaintiff to show the reason proffered is a pretext for discrimination.  <u>Id.</u> at 804.

    To establish the <u>prima facie</u> case for retaliation, a plaintiff must show that "(1) she engaged in activity protected by Title VII; (2) the employer took an adverse employment action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action."  <u>Nelson v. Upsala College</u>, 51 F.3d 383, 386 (3d Cir.1995).

    Here, Temple argues that Young cannot establish the second and third prongs of a <u>prima facie</u> case.  We agree with Temple, and will grant summary judgment in its favor.

    Temple argues that Young cannot establish that it took any adverse employment action against her.  The sole basis for

16

Young's claim is that she was denied promotion to the position of Senior COTA.  Pl.'s Mem. at 23.  But Temple never had such a position either before, during, or after Young's tenure.  Young Dep. at 61-62, 64.  Although Young and her supervisors may have discussed the idea of creating such a position, no one promised Young that she would get that position, let alone that the position would be created just for her.  Id. at 147.  Whether these supervisors agreed that she would have been qualified if such a position existed is of no moment.  The position never existed and so it could never have been denied to Young.

Temple also contends that there is no causal connection between Young's participation in the protected activity and the adverse employment action.  Assuming that the Senior COTA position did exist, Young presents no real evidence of a causal connection.  In her brief, Young argues that there is sufficient "temporal proximity" between the decision not to promote her and her complaints about Brant.  Pl.'s Mem. at 23-24. Only by ignoring that the Senior COTA position did not exist and that Temple recorded and acted on every complaint lodged against Brant, could a reasonable finder of fact, granting every possible inference to Young, find a causal connection between Young's resignation and Temple's "denial" of promotion.  But we will not

17

indulge in such a fanciful analysis in the face of the record here.

Turning to the question of pretext, we glean from each side's papers that the proffered legitimate reason for not giving Young the promotion she sought was that the position did not exist.  The plaintiff must present some evidence by which a reasonable factfinder could either "(1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action."  Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994).  Under the Fuentes test, the evidence plaintiff proffers must meet a heightened "level of specificity" to survive summary judgment.  Simpson v. Kay Jewelers, 142 F.3d 639, 646 (3d Cir. 1998).

Young presents no evidence that the proffered reason is pretext.  The only evidence Young presents for disbelieving Temple's reason for not promoting her [to a non-existent position] is her own testimony that she "began to believe that Merkel felt that Young did not deserve the position because [Young] was causing disarray in the Occupational Therapy Department, even though she was the victim."  Pl.'s Mem.  at 23 (citing Young Dep. at 147-48).  Though Young may have sincerely

believed this, it is rank speculation and does not amount to admissible evidence, let alone rise to the level of specificity that is necessary to defeat summary judgment.

　　　　For the foregoing reasons, we will also grant summary judgment in Temple's favor on Young's retaliation claim.

　　　　　　　　BY THE COURT:


　　　　　　　　/s/ Stewart Dalzell, J.

19

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JACQUELINE YOUNG             :          CIVIL ACTION
                             :
       v.                    :
                             :
TEMPLE UNIVERSITY HOSPITAL   :          No. 08-691

<u>ORDER</u>

AND NOW, this 15th day of October, 2008, upon consideration of defendant Temple University Hospital's motion for summary judgment (docket number #16), plaintiff Jacqueline Young's response, and the reply thereto, it is hereby ORDERED that:

1.   Temple University Hospital's motion for summary judgment is GRANTED; and

2.   The Clerk of Court shall CLOSE this case statistically.

BY THE COURT:


<u>/s/ Stewart Dalzell, J.</u>

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JACQUELINE YOUNG                :            CIVIL ACTION
                                :
         v.                     :
                                :
TEMPLE UNIVERSITY HOSPITAL      :            No. 08-691

<u>JUDGMENT</u>

AND NOW, this 15th day of October, 2008, in accordance with the accompanying Memorandum and Order, and the Court having this day granted defendant's motion for summary judgment, JUDGMENT IS ENTERED in favor of defendant Temple University Hospital and against plaintiff Jacqueline Young with each side to bear its own costs.


BY THE COURT:


/s/ Stewart Dalzell, J.